UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| JOEL BEHNKEN, | : | Case No. 3:18-cv-406 |
| --- | --- | --- |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Joel Behnken brings this case challenging the Social Security Administration's denial of his application for period of disability and Disability Insurance Benefits. He applied for benefits on January 26, 2016, asserting that he could no longer work a substantial paid job. Administrative Law Judge (ALJ) Deborah F. Sanders concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), Plaintiff's Reply (Doc. #11), and the administrative record (Doc. #6).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Sanders's non-disability decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since June 15, 2015. He was forty years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. § 404.1563(c). He has a high school education. *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #6, *PageID* #s 57-72), Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), and Plaintiff's Reply (Doc. #11). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

3

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV.     **The ALJ's Decision**

As noted previously, it fell to ALJ Sanders to evaluate the evidence connected to Plaintiff's application for benefits. She did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. She reached the following main conclusions:

Step 1:  Plaintiff has not engaged in substantial gainful employment since June 15, 2015.

Step 2:  He has the severe impairments of depressive disorder, anxiety disorder, pain disorder, adjustment disorder, post-traumatic stress disorder, gout, plantar fasciitis, degenerative disc disease of the lumbar spine with radiculopathy, and osteoarthritis of the spine.

Step 3:  He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:  His residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … except lift/carry 20 pounds occasionally and ten pounds frequently. The claimant could stand and/or walk up to two hours in eight-hour workday; alternate position from standing or walking after every hour of standing or walking. He would be able to sit for a few minutes while remaining on task and can sit up to six hours in eight-hour workday being able to change position after every hour of sitting. He is able to occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds. The claimant could frequently balance, and occasionally stoop, kneel, crouch, and crawl. He should never work at unprotected heights and should avoid concentrated exposure to extreme cold and excessive vibration. The claimant can occasionally interact with coworkers and public but not in a customer service capacity; engage in simple routine tasks at a moderate production rate pace; and adapt to infrequent changes in the work place."

4

Step 4: He is unable to perform any of his past relevant work.

Step 5: He could perform a significant number of jobs that exist in the national economy.

(Doc. #6, *PageID* #s 57-72). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 71.

V. **Discussion**

Plaintiff contends that the ALJ reversibly erred in evaluating the medical source opinions and medical evidence. The Commissioner maintains that substantial evidence supports the ALJ's decision.

A. **Medical Opinions**

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions. "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule." *Rogers,* 486 F.3d at 242 (citations omitted). The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

5

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id*. (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id*. Substantial evidence must support the reasons provided by the ALJ. *Id*.

Plaintiff asserts that the ALJ correctly awarded "deferential weight" to the opinion of Plaintiff's treating physician, Dr. Shaw, "but then reversibly erred by inexplicably failing to defer to Dr. Shaw's opinion that Behnken was unable to return to work." (Doc. #7, *PageID* #1208).

Although ALJ Sanders assigned deferential weight, there is no indication that she deferred to his opinions. She generally concluded, "I find that the opinion evidence submitted by Dr. Shaw is afforded differential weight based upon the respective specialties of the treatment provider, examining and personally treating medical relationship of various lengths, various frequencies of medical specialties, testing and treatment." (Doc. #6, *PageID* #69). However, she addressed some of his opinions more specifically.

6

The ALJ acknowledged that Dr. Shaw opined that Plaintiff is unable to return to work due to his current medical condition and ongoing treatment. However, she only gave one reason for discounting it. She concluded that because he is not a vocational expert, he is therefore "not qualified to give an opinion on other work (which he did not) that [Plaintiff] may be capable of performing outside of his past work." *Id.* at 69. The fact that Dr. Shaw expressed an opinion on the ultimate issue of Plaintiff's disability status is not a valid reason to discount or ignore it. "The pertinent regulation says that 'a statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.' That's not the same thing as saying that such a statement is improper and therefore to be ignored...." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) (internal citation omitted); *see Kalmbach v. Comm'r of Soc. Sec.*, No. 09-2076, 409 F. App'x 852, 861 (6th Cir. 2011) ("the fact that the ultimate determination of disability, *per se,* is reserved to the Commissioner, 20 C.F.R. § 404.1527(e) [§ 416.927(d)(1)], did not supply the ALJ with a legitimate basis to disregard the physicians' [opinions].").

Additionally, the ALJ specifically addressed Dr. Shaw's opinion that Plaintiff has consistent interference of pain that affects almost all aspects of his life. She concluded, "Although this may be true to some extent, the [Plaintiff's] pain does not cause a significant limitation on [his] ability to perform basic work activities." (Doc. #6, *PageID* #69). In support, the ALJ noted that Plaintiff testified that "he is able to lift/carry his 20-pound son. He does yard work such as mowing the lawn and maintaining the flowers. [Plaintiff] testified that he can still do many things, but when he does, he ends up not

7

being able to move for two to three days." *Id*. Additionally, Plaintiff testified that he can sit for up to one hour and thirty minutes and stand/walk for an hour. *Id*.

In reaching her conclusion, ALJ Sanders mischaracterized parts of Plaintiff's testimony. For example, Plaintiff testified that he lifts his twenty-pound son out of his crib but only "out of necessity" and "that even kills me." *Id.* at 101-02. Sometimes when Plaintiff lifts him, "my back will just go, and I've got to put him right back down …." *Id.* at 109. He struggles with changing his son's diapers because he cannot lift his son onto the changing table. *Id.* at 101. He cannot change his son's diapers on the floor because his back "can't handle it." *Id.* at 101, 109. Instead, Plaintiff has his son go on the couch and then changes his diaper. *Id.* at 101. Plaintiff testified that in the summer he picks "the little thing off the flowers" and does some watering. *Id.* at 112. He "can walk behind the mower sometimes, but sometimes the vibration just kills [him], and [he] can't do it." *Id.* If he does mow the grass, his activity is short-lived—it only takes fifteen minutes. *Id.* at 113. When Plaintiff starts to feel better, he tries to do more around the house but, as soon as he does, "boom, I'm flat on my back for a week, three days, two weeks." *Id.* at 119-20. Significantly, "the ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradict the ALJ's finding." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (citing *Johnson v. Comm'r Soc. Sec.*, 652 F.3d 646, 652 (6th Cir. 2011) ("The ALJ's focus on claimant's ability to do 'yard work' is misplaced ….").

In addition to Plaintiff's testimony, the medical evidence is not consistent with the ALJ's conclusion that pain does not cause a significant limitation on his ability to work. For example, treatment notes from Plaintiff's surgeon, Dr. Bernstein, supports Dr. Shaw's opinions. In November 2015, more than three months after his "redo laminectomy," Dr. Bernstein indicated that Plaintiff continued to have low back pain, pain that shoots up his back and into both arms, and rectal incontinence. (Doc. #6, *PageID* #570). Dr. Bernstein told Plaintiff that a laminectomy for radiculopathy does not get rid of back pain. *Id.* Further, "[i]f one wants to have an attempt at getting rid of back pain[,] [it] involves a fusion which he does not want[.] [T]his is understandable." *Id.* In January 2016, Dr. Bernstein indicated that Plaintiff "continues to have back pain with any active activity radiating into both buttocks and both legs. *Id.* at 572.

Further, in September, October, November 2016, and March 2017, Dr. Reddy, Plaintiff's pain specialist rated on a scale from one to ten how much Plaintiff's pain interferes with various aspects of his life, including general activity: 8/10, walking ability: 6/10, sleep: 6/10, and relationship with other people: 6/10. *Id.* at 787, 793, 802-03. And, Plaintiff's primary care doctor, Ziad Khatib, M.D., noted in August 2017 that Plaintiff continued to have back pain and although he has had trigger point injections, he was not showing significant improvement. *Id.* at 1039. He continued Plaintiff's pain medication for the time being and noted, "keep him off work." *Id.* In November 2017, Dr. Khatib indicated that Plaintiff had tenderness and reduced range of motion in his lumbar back. *Id.* at 1037. He indicated that Plaintiff's low back pain "will keep him off work for the time being." *Id.* at 1035.

In addition, the ALJ overlooked or ignored that Dr. Paley's assessment is consistent with Dr. Shaw's opinion.[2]  "[A] substantiality of evidence evaluation does not permit a selective reading of the record.  'Substantiality of the evidence must be based upon the record taken as a whole.  Substantial evidence is not simply some evidence, or even a great deal of evidence.  Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'"  *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler,* 745 F.2d 383, 388 (6th Cir. 1984)) (internal citations and quotation marks omitted).  Dr. Paley noted that he discussed with Plaintiff the history of his back injury and evaluated Plaintiff's medical file "in conjunction with an independent medical review by Dr. Jefferey Caufield, who opines that no additional conditions or treatment are warranted with regard to [Plaintiff's] industrial injuries."  (Doc. #6, PageID #410).  Dr. Paley explained that Plaintiff had a prior back injury and surgery in 2010.  After surgery, Plaintiff was "very proactive in the treatment of his low back" and continued to work "without any significant issues" until June 15, 2015, when he began to experience "significant and consequential problems with his low back and left lower extremity."  *Id.* at 410-11.  Dr. Paley indicated that MRIs of Plaintiff's lumbar spine from before and after this date reveal "significant progression of the left central spinal canal stenosis at L5-S1, now extruded with an extruded disc fragment ….  There is impingement on the S1 nerve root."  *Id.* at 411.  He concluded that Plaintiff "has sustained more than a simple

---

[2] Plaintiff acknowledges that Dr. Paley's assessments "may not technically qualify as 'medical opinions' because he did not opine about specific functional limitations."  (Doc. #7, *PageID* #1207).

10

neuritis, and has gone on to worsen his clinical condition by way of substantial aggravation of a pre-existing L5-S1 disc herniation." *Id.*

Although the ALJ provided reasons for rejecting some of Dr. Shaw's opinions, substantial evidence does not support her reasons and thus, they do not constitute "good reasons." "The failure to provide 'good reasons' for not giving [a treating physician's] opinions controlling weight hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (citing *Wilson,* 378 F.3d at 544).

Plaintiff asserts that the ALJ erred by applying more rigorous scrutiny to Dr. James' opinions than to the opinions of the record-reviewing consultants. (Doc. #7, *PageID* #1209). Unless a treating source's opinion is given controlling weight, in deciding what weight to assign an opinion, an ALJ must consider the same factors they consider when weighing a treating physician's opinion: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. 20 C.F.R. § 404.1527(c). The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." Soc. Sec. R. 96-6p, 1996 WL 374180, *2 (Soc. Sec. Admin. July 2, 1996).

The ALJ assigned "partial weight" to Dr. James' opinions "because of his medical specialties, specialized Social Security disability program knowledge, extensive experience performing independent, non-treating, objective medical examinations of Social Security disability claimants, and personally examined the claimant but lacked

11

access to the longitudinal medical records." (Doc. #6, *PageID* #s 69-70). She explained further that Dr. James diagnosed mild depressive symptoms but a board-certified psychiatrist, Shardha Sabesan, diagnosed depressive disorder not otherwise specified and assigned a global assessment of functioning (GAF) score of 45, indicating serious symptoms. The ALJ found Dr. Sabesan's conclusions more persuasive because she was Plaintiff's treating psychiatrist and had access to longitudinal treatment records.

In contrast, the ALJ assigned "great weight" to the record reviewing psychologists' opinions. As she did with Dr. James, the ALJ credited the psychologists' "medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases." *Id.* at 62. But the ALJ also gave two additional reasons for discounting the record-reviewing psychologist's opinions— "these reviewer[s] lack the degree of impartiality of the independent medical experts and the regulatory standard for assessing mental disorders was changed since the opinions were rendered." *Id.*

Although the Regulations provide for a more rigorous analysis of non-examining sources than that of examining physicians, the ALJ's analysis demonstrates the opposite. For example, the ALJ criticized Dr. James' opinion for conflicting with Dr. Sabesan's progress notes, but she did not mention that Dr. Sabesan's opinion that Plaintiff had serious symptoms is not consistent with the record-reviewing psychologists' opinion that Plaintiff had only mild-to-moderate limitations.

Further, while the ALJ emphasizes the disparities between Dr. James and Dr. Sabeson, she does not acknowledge that Dr. Sabesan's notes are largely consistent with

Dr. James' opinions. For instance, Dr. James' opinions that Plaintiff's prognosis was poor and he did not have the ability to manage anxiety, stress, and workplace demands is consistent with Dr. Sabesan's opinion that Plaintiff has serious symptoms. Likewise, Dr. James' opinions are consistent with Dr. Sabesan's notes that Plaintiff's insight was superficial; his judgment was impaired; his psychomotor activity was slow, and he walked with a limp secondary to pain. *Id.* at 717. Not only did the ALJ fail to acknowledge that Dr. Sabesan's opinion is consistent with Dr. James' opinions, she failed to provide any specific reason for rejecting those opinions.

Accordingly, for the above reasons, Plaintiff's Statement of Errors is well taken.[3]

**B.     Remand**

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial right. *Bowen*, 478 F.3d at 746. Remand may be warranted when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson*, 378 F.3d at 545-47; failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F.3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff lacks credibility, *see Rogers*, 486 F.3d at 249.

---

[3] In light of the above discussion, and the resulting need to remand this case, an in-depth analysis of Plaintiff's other challenges to the ALJ's decision is unwarranted.

13

Under sentence four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and the evidence of disability is not strong while contrary evidence is lacking. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to sentence four of § 405(g) due to the problems discussed above. On remand, the ALJ should be directed to evaluate the evidence of record, including the medical source opinions, under the applicable legal criteria mandated by the Commissioner's Regulations and Rulings and by case law; and to evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether his applications for Disability Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be vacated;

2. No finding be made as to whether Plaintiff Joel Behnken was under a "disability" within the meaning of the Social Security Act;

14

3. This matter be **REMANDED** to the Social Security Administration under sentence four of 42 U.S.C. § 405(g) for further consideration consistent with this Report and Recommendations, and any decision adopting this Report and Recommendations; and

4. The case be terminated on the Court's docket.


January 30, 2020 　　　　　　　　　　　　　　　　*s/Sharon L. Ovington*
　　　　　　　　　　　　　　　　　　　　　　　　Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).